Brian J. Porter, Bar Number 14291
Armand J. Howell, Bar Number 10029
Benjamin J. Mann, Bar Number 12588
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for Ditech Financial, LLC
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: brian@hwmlawfirm.com
File No: 52911

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>MARILYN R MONSON<br><br>Debtor. | Bankruptcy Case No. 19-24954<br>Chapter 13<br>**MOTION TO TERMINATE AUTOMATIC STAY AS TO DITECH FINANCIAL, LLC AND FOR IN-REM RELIEF PURSUANT TO 11 U.S.C.A. § 362 (d)(4)** |

Ditech Financial, LLC. ("Ditech"), hereby moves the Court pursuant to 11 U.S.C.,

Section 362, for an order terminating the automatic stay and for In-Rem Relief Pursuant to 11

U.S.C.A**.** § 362(d)(4) with respect to the following described real property (the "Property")

located in Utah County, State of Utah:

> Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.
>
> Commonly known as 11041 North 5730 West, Highland, Utah 84003;

so that it may proceed with the foreclosure process on its security interest in the property.  This

motion is based on the following.

## STATEMENTS OF FACTS

1.     That on or about March 27, 2007, Borrower, Gary L. Monson, executed the Promissory Note in the original principal sum of $248,000.00 ("Note"), along with a Deed of Trust, originally in favor of Mortgage Electronic Registration Systems Inc. as nominee for America's Wholesale Lender, which granted a security interest in the real property, located at 11041 North 5730 West, Highland, Utah 84003 (the "Property").  Copies of the Note and Deed of Trust are attached hereto as Exhibit "A".

2.     The Note and beneficial interest in the Deed of Trust was subsequently transferred from America's Wholesale Lender to BAC Home Loan Servicing LP FKA Countrywide Home Loans Servicing LP, was then transferred to Green Tree Servicing LLC, and is now held by Ditech Financial LLC FKA Green Tree Servicing LLC. Copies of the Assignments are attached hereto as Exhibit "B".

3.     Borrower has defaulted under the terms of the Note and Mortgage by failing to make the monthly payments due on July 1, 2010, and all subsequent payments.

4.     As a result of Borrower's default under the terms of the Note and Trust Deed, Ditech Financial LLC substituted Halliday Watkins & Mann P.C. as the successor trustee of the Trust Deed on June 8, 2018.  A copy of the recorded Substitution of Trustee is attached as Exhibit "C".

5.     On December 3, 2018, Halliday Watkins & Mann, P.C. scheduled a Trustee's Sale for December 3, 2018 at 9:00 A.M.  A copy of the December 3, 2018 Notice of Sale is attached hereto as Exhibit "D".

6.     On December 3, 2018, borrower Gary Lynn Monson filed bankruptcy case no. 18-

28987 The case dismissed on January 14, 2019.

7.      On February 25, 2019, Halliday Watkins & Mann, P.C. scheduled a Trustee's Sale for April 1, 2019, at 9:00 AM.  A copy of the April 1, 2019, Notice of Sale is attached hereto as Exhibit "E".

8.      On April 1, 2019, Borrower Gary Lynn Monson filed case no. 19-22105. The case dismissed on May 8, 2019 for failure to file the proper paperwork.

9.       On June 3, 2019, Halliday Watkins & Mann. P.C. scheduled a Trustee's Sale for July 8, 2019, at 9:00 AM.  A copy of the July 8, 2019 Notice of Sale is attached hereto as Exhibit "F".

10.     On July 8, 2019, the Debtor filed the underlying case.   Although this is the Debtor's first filing this year it is the eighth Chapter 13 filing in this district involving either Gary Lynn Monson or the Debtor since 2011 as follows:

| | |
|---|---|
| 11-22630 | Filed 03/03/2011; Dismissed for Other Reason on 03/23/2011 |
| 11-27187 | Filed on 5/7/2011; Dismissed for Failure to File Information on 7/6/2011 |
| 13-25730 | Filed on 5/20/213; Dismissed for Other Reason on 7/26/2013 |
| 13-32539 | Filed on 11/30/2013; Dismissed for Other Reason on 1/16/2014 |
| 16-21332 | Filed on 2/25/2016; Dismissed for Failure to Pay Filing Fee on 3/16/2016 |
| 16-30053 | Filed on 11/4/2016; Dismissed for Failure to Pay Filing Fee on 12/2/2016 |
| 18-28987 | Filed on 12/03/2018; Dismissed for Other Reason on 1/14/2019 |
| 19-22105 | Filed 4/1/2019; Dismissed after Motion from Trustee on 5/8/2019; |
| 19-24954 | Present Case, Filed 7/8/2019 |

## ARGUMENT

**1.      Court should grant relief from the Stay**

11 U.S.C.A. 362(d)(1) provides that relief from the stay shall be granted for cause (1)

cause and (2) (A) the debtor does not have an equity in such property and (B) such property is

not necessary to an effective reorganization.  There is cause to terminate the stay under 362(d)(1)

based upon the scheme by borrower and debtor, to hinder, delay, or defraud Ditech Financial,

LLC and grounds to terminate the stay since the borrower and debtor have filed multiple times

on the eve of scheduled trustee sales, the Debtor does not have equity in the Property and the

Property is not necessary for an effective reorganization.

> *A.      Cause to Terminate the Stay Due to the Scheme to Delay and/or Hinder Ditech
> Financial, LLC.*

Borrower and debtor have engaged in a sophisticated scheme involving the filing of

multiple bankruptcy cases over 8 years, most if not all of these filings on the eve of multiple

foreclosure sales.  The arrearage has continued to increase during this time, with the amount

owing on the loan exceeding $201,969.12 in arrearage payments, late fees, and costs.  The only

intent has been to prevent foreclosure for as long as possible.  It is clear that Debtor is is engaged

in a scheme to delay, hinder or defraud Secured Creditor, and using the bankruptcy code as a

weapon to further delay Secured Creditor.  As such, cause exists to terminate the automatic stay.

**2.      Relief from Stay under 362(d)(4)**

11 U.S.C.A. 362(d)(4) provides for relief from the stay shall be binding on the property

for two years from the date of the entry of the order.

> With respect to a stay of an act against real property by a creditor whose claim is secured
> by an interest in such real property, if the court finds that the filing of the petition was
> part of a scheme to delay, hinder, **or** defraud creditors that involved:
>       (A)      transfer of all or part ownership of, or other interest in, such real property

without the consent of the secured creditor or court approval.
  (B) multiple bankruptcy filings affecting such real property.
If recorded in compliance with applicable State laws… be binding in any other case
under this title filed not later than 2 years after the date of order.

In the present case, Borrowers and Debtor's successive bankruptcy petitions coupled with the timing of these petitions on the eve of foreclosure sales demonstrates that this petition is part of a scheme to delay, hinder, or defraud creditor affecting the Property.  Therefore, Ditech requests that the Court order be binding on the property for the next two years.

 **3.**  **Waiver of Rule 4001(a)(3) 14 Day Waiting Period**

Pursuant to Rule 4001(a)(3) an order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise* (emphasis added).  The Court should waive the 14-day waiting period based upon the scheme to delay, hinder and defraud Ditech Financial, LLC.  Therefore, Ditech Financial, LLC requests that the stay be terminated effective immediately upon the Court signing the Order Terminating the Stay.

WHEREFORE, Ditech Financial, LLC moves the Court for the following relief:

1.  That the evidentiary hearing to be held within thirty days of the date of this motion in accordance with 11 U.S.C., Section 362, be the final evidentiary hearing on this matter;

2.  That the automatic stay pursuant to 11 U.S.C., Section 362, be modified and terminated to permit Ditech Financial, LLC to immediately exercise its rights and remedies under applicable state and federal law;

3.  That any order granting relief from the stay be binding on the Property pursuant to 11 U.S.C.A. § 362(d)(4) in that no automatic stay will be in effect for a period of two years in

respect to the Debtor's real property located in Utah County, and legal described as:

> Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.

> Commonly known as 11041 North 5370 West, Highland, Utah 84003

4.     With respect to Rule 4001(a)(3), for immediate enforcement of any order for relief granted herein;

5.     That in the event an order dismissing this case is entered prior to the hearing on Ditech Financial, LLC's motion that the court retain jurisdiction for the limited purpose of both hearing and ruling on Ditech Financial, LLC's motion.

DATED this 30th day of July, 2019.

/s/ Brian J. Porter

Brian J. Porter

Attorney for Ditech Financial, LLC

# EXHIBIT "A"

# NOTE

CRPRDNRBS46a          12/16/2011   20:00 DSN   07/22/2011197126   888-297-3858

 

Prepared by: CAROLE CHEW

LOAN #: ⬛⬛⬛⬛

# NOTE

MARCH 27, 2007                SLC                    UTAH
[Date]                       [City]                  [State]

11041 N 5730 W, HIGHLAND, UT 84003-9425
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 248,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST      day of each month beginning on
JUNE 01, 2007      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,608.52

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials: ⬛⬛⬛⬛ 

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 2

 -5N (0207).01     CHL (010/04)(d)      VMP Mortgage Solutions, Inc. (800)521-7291                Form 3200 1/01



CRPRDNRBS46a          12/16/2004 14:06 PM   PAGE  15/120   888-294-5658

 

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION,
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _Michele Sjolander_
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Gary L. Monson_ _____ (Seal)          _____ (Seal)
GARY L. MONSON                         -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                          -Borrower

*[Sign Original Only]*

-6N (0207).01   CHL (10/04)                    Page 2 of 2                         Form 3200 1/01

# DEED OF TRUST

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CAROLE CHEW
AMERICA'S WHOLESALE LENDER

6955 UNION PARK CENTER #400
MIDVALE
UT 84047

ENT 48025:2007 PG 1 of 11
RANDALL A. COVINGTON
UTAH COUNTY RECORDER
2007 Apr 03 10:28 am FEE 30.00 BY JZ
RECORDED FOR INWEST TITLE SERVICES - SAL
ELECTRONICALLY RECORDED

——————————— [Space Above This Line For Recording Data] ———————————

[Escrow/Closing #]                    [Doc ID #]

Tax Serial Number: ▮▮▮▮▮

# DEED OF TRUST

MIN ▮▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  MARCH 27, 2007         , together with all Riders to this document.
**(B) "Borrower"** is
GARY L MONSON


Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
**(D) "Trustee"** is
STEWART T. MATHESON, ATTORNEY AT LAW
648 EAST FIRST SOUTH, SALT LAKE CITY, UT 84102

UTAH--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

VMP® -6A(UT) (0005)     CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291

Form 3045 1/01

CONV/VA





DOC ID #:

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated  MARCH 27, 2007          . The Note states that Borrower owes Lender
TWO HUNDRED FORTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 248,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MAY 01, 2037            .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the

                COUNTY                    of              UTAH                    :
        [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

DOC ID #: ██████████████

LOT 10, PLAT "A", CASTLE GLEN ESTATES, ACCORDING TO THE OFFICIAL PLAT
THEREOF AS RECORDED IN THE OFFICE OF THE UTAH STATE COUNTY RECORDER, STATE
OF UTAH.

which currently has the address of
11041 N 5730 W, HIGHLAND
[Street/City]
Utah 84003-9425 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant, convey and warrant the Property and that the Property is unencumbered, except for
encumbrances of record. Borrower further warrants and will defend generally the title to the Property against
all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower
shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment
charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to
Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.
However, if any check or other instrument received by Lender as payment under the Note or this Security
Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under
the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:
(a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or
entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such
other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender
may return any payment or partial payment if the payment or partial payments are insufficient to bring the
Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current,
without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in
the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each
Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied
funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If
Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return
them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future
against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments
accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the
Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to
each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to
late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

ENT 48025:2007 PG 4 of 11

DOC ID #: ▮▮▮▮▮▮▮▮

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain

DOC ID #: ███████

priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

ENT **48025:2007** PG 6 of 11

DOC ID #: ▮▮▮▮▮▮▮▮

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

ENT 48025:2007 PG 7 of 11

DOC ID #:

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

DOC ID #:

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

DOC ID #:

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous

ENT **48025:2007** PG 10 of 11

DOC ID #: ▓▓▓▓▓▓▓▓

Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. In the event Borrower does not cure the default within the period then prescribed by Applicable Law, Trustee shall give public notice of the sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines (but subject to any statutory right of Borrower to direct the order in which the Property, if consisting of several known lots or parcels, shall be sold). Trustee may in accordance with Applicable Law, postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

ENT **48025:2007** PG 11 of 11

DOC ID #: ▓▓▓▓▓▓▓▓

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Gary L. Monsen_ _____ (Seal)

GARY L. MONSON                                          -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

STATE OF UTAH,                  Salt Lake      County ss:

The foregoing instrument was subscribed and sworn to and acknowledged before me this
March 24, 2007 by Gary L. Monson

My Commission Expires: 2-26-10

                                   Notary Public
                                   Residing at: SLCUT

VICKY ROBINS
NOTARY PUBLIC • STATE of UTAH
310 E 4800 S SUITE 104
SALT LAKE CITY UT 84107
MY COMMISSION EXPIRES: 02-26-2010

VMP -6A(UT) (0005)        CHL (08/05)        Page 11 of 11                    Form 3045 1/01

# EXHIBIT "B"

# ASSIGNMENT

ENT 55240:2010 PG 1 of 2
Rodney D. Campbell
UTAH COUNTY RECORDER
2010 Jul 02 9:07 am FEE 12.00 BY CS
RECORDED FOR LSI TITLE AGENCY INC.
ELECTRONICALLY RECORDED

**RECORDING REQUESTED BY:**
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

**WHEN RECORDED MAIL DOCUMENT**
**TAX STATEMENT TO:**
BAC HOME LOANS SERVICING, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

TS No:
TSG No:
APN:

SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 03/27/2007, EXECUTED BY: GARY L MONSON, TRUSTOR: TO STEWART T. MATHESON, ATTORNEY AT LAW, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 48025:2007 ON 04/03/2007 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF UTAH COUNTY, IN THE STATE OF UTAH. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN UTAH COUNTY, THE STATE OF UTAH AND IS DESCRIBED AS FOLLOWS:

LOT 10, PLAT "A", CASTLE GLEN ESTATES, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE UTAH STATE COUNTY RECORDER, STATE OF UTAH.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

Dated: June 30 , 20 10

By:   MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

BY: Carmelia Boone Assistant Secretary

Tax ID                Page 1 of 2                Form UTAssgn (04/08)

ENT 55240:2010 PG 2 of 2

STATE OF _Texas_ )
COUNTY OF _Tarrant_ )

On _6-30-2010_ , before me    **Tiffany Cheree Douglas**_____ , personally appeared
_Carmelia Boone asst sec_ , known to me (or proved to me on the oath of _____ or
through _TX DL_ ) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
WITNESS MY HAND AND OFFICIAL SEAL

_____
Notary Public's Signature

TIFFANY CHEREE DOUGLAS
MY COMMISSION EXPIRES
August 25, 2012



ENT **70525:2013** PG 1 of 2
**JEFFERY SMITH**
**UTAH COUNTY RECORDER**
2013 Jul 23 12:09 pm FEE 12.00 BY SW
RECORDED FOR CORELOGIC SOLUTIONS LLC

Recording Requested By:
**Bank of America**
Prepared By: **Noor Sadruddin**

When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Tax ID:
Property Address:
**11041 N 5730 W**
**Highland, UT 84003-9425**
UT0-ADT        5/14/2013  GT0430A

*This space for Recorder's use*

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:      **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER**

Made by:            **GARY L MONSON**

Trustee:            **STEWART T. MATHESON, ATTORNEY AT LAW**

Date of Deed of Trust: **3/27/2007**       Original Loan Amount: **$248,000.00**

Recorded in **Utah County**, UT on: 4/3/2007, book N/A, page N/A and instrument number 48025:2007

Property Legal Description:
**LOT 10, PLAT "A", CASTLE GLEN ESTATES, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE UTAH STATE COUNTY RECORDER, STATE OF UTAH.**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**05-15-13**

Bank of America, N.A.

By: _Arafath Islam_
    _ARAFATH ISLAM_
    _Assistant Vice President_

ENT   70525:2013 PG 2 of 2

State of TX, County of __Dallas__

On __5.15.13__, before me, __Adrienne Greer__, a Notary Public, personally
appeared __Arafath Islam__, __Assistant Vice President__ of Bank of
America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

Notary Public: __Adrienne Greer__
My Commission Expires: __2.19.2016__

ADRIENNE GREER
My Commission Expires
February 19, 2016

DocID#

# EXHIBIT "C"

ENT **57407:2018** PG 1 of 1
**Jeffery Smith**
**Utah County Recorder**
2018 Jun 20 10:21 AM FEE 10.00 BY BA
RECORDED FOR Halliday, Watkins & Mann, P.C.
ELECTRONICALLY RECORDED

AFTER RECORDING RETURN TO:
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111

**FILE #: 52911**

## APPOINTMENT OR SUBSTITUTION OF TRUSTEE

NOTICE IS HEREBY GIVEN, that the law firm of Halliday, Watkins & Mann, P.C., 376 East 400 South, Suite 300, Salt Lake City, UT 84111, is hereby appointed Trustee under that certain written Trust Deed dated March 27, 2007, executed by Gary L. Monson, as Trustor, in which Mortgage Electronic Registration Systems Inc. as nominee for America's Wholesale Lender, its successors and assigns was named as Beneficiary, and Stewart T. Matheson, Attorney at Law as Trustee, and filed for record in the office of the County Recorder of Utah County, State of Utah, on April 3, 2007, as Entry No. 48025:2007, of Official Records.

Said real property is situated in Utah County, State of Utah, and more particularly described as follows:

Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.

MORE CORRECTLY DESCRIBED AS FOLLOWS:

Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah County Recorder, State of Utah. **TAX**

The Beneficiary ratifies and confirms any action taken on the Beneficiary's behalf by the herein appointed Trustee prior to the recording of the Appointment or Substitution of Trustee.

Dated this ___8ᵗʰ___ day of June, 2018.

Ditech Financial LLC f/k/a Green Tree Servicing LLC

By: _____
Name: Araceli Vazquez Jimenez
Title: Document Execution Representative

State of Arizona        )
                                   :ss.
County of Maricopa   )

The foregoing instrument was acknowledged before me this ___8ᵗʰ___ day of June, 2018, by Araceli Vazquez Jimenez, the Document Execution Representative of Ditech Financial LLC f/k/a Green Tree Servicing LLC.

_____
Notary Public

**LORI PASKASH**
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
November 19, 2021

SOT-11041 North 5730 West, Highland, UT 84003

# EXHIBIT "D"

## NOTICE OF TRUSTEE'S SALE

The following property will be sold at public auction to the highest bidder without warranty, at the South Main Entrance, Fourth Judicial District, American Fork Division, 75 East 80 North, American Fork, Utah, on 12/3/18 at 09:00 AM, for the purpose of foreclosing a Trust Deed executed by Gary L. Monson, as Trustor, in favor of Mortgage Electronic Registration Systems Inc. as nominee for America's Wholesale Lender, its successors and assigns, recorded on 4/3/07, as Entry # 48025:2007, covering real property purportedly known as 11041 North 5730 West, Highland, UT 84003, and more particularly described as:

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.**

### MORE CORRECTLY DESCRIBED AS FOLLOWS:

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah County Recorder, State of Utah. TAX** ▮▮▮▮▮▮▮▮

Ditech Financial LLC f/k/a Green Tree Servicing LLC is the current Beneficiary of the Trust Deed. Record owners of the property as of the recording of the Notice of Default are reported to be Linda Gayle Christensen and Esperanza April Hernandez and Gary L. Monson and Marilyn J. Monson aka Marilyn R. Monson aka Marilyn J. R. Monson and Royce L. Monson.

A $20,000.00 deposit in the form of a bank or credit union cashier's check or a bank official check, payable to Halliday, Watkins & Mann, P.C., is required to bid. A successful bidder who fails to tender the full purchase price will forfeit the entire deposit. The successful bidder must tender the deposit at the sale and the balance of the purchase price by 12:00 noon the following business day. The balance must be in the form of a wire transfer, bank or credit union's cashier's check, or bank official check payable to Halliday, Watkins & Mann, P.C. A bank or credit union cashier's check must be pre-printed and clearly state that it is a cashier's check. A bank official check must be pre-printed and clearly state that it is an official check.

Cash payments are not accepted.

A trustee's deed will be delivered to the successful bidder within five business days after receipt of the amount bid.

Successor Trustee disclaims liability for any error in the street address shown herein. Successor Trustee may void sale due to any unknown facts at time of sale that would cause the cancellation of the sale.  If sale is voided, Successor Trustee shall return funds to bidder, and the Successor Trustee and Beneficiary shall not be liable to bidder for any damages. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Beneficiary, Trustor, Successor Trustee or the Successor Trustee's attorney.

This is an attempt to foreclose a security instrument and any information obtained will be used for that purpose.

Dated: 10/29/18

HALLIDAY, WATKINS & MANN, P.C.:

By: _____

Name: _____

Attorney and authorized agent of the law firm of
Halliday, Watkins & Mann, P.C.
Successor Trustee
376 E 400 S, Ste 300
SLC, UT 84111
PH 801-355-2886
Office Hours: M-F: 8am – 5pm
H/W # 52911

# Notice to Tenant

As stated in the accompanying Notice of Trustee's Sale, this property is scheduled to be sold at public auction to the highest bidder unless the default in the obligation secured by this property is cured. If the property is sold, you may be allowed under Utah Code Section 57-1-25.5 to continue to occupy your rental unit until your rental agreement expires, or until 45 days after the date you are served with a notice to vacate, whichever is later. If your rental or lease agreement expires after the 45-day period, you may need to provide a copy of your rental or lease agreement to the new owner to provide your right to remain on the property longer than 45 days after the sale of the property.

You must continue to pay your rent and comply with other requirements of your rental or lease agreement or you will be subject to eviction for violating your rental or lease agreement.

The new owner of the new owner's representative will probable contact you after the property is sold with directions about where to pay rent.

The new owner of the property may or may not want to offer to enter into a new rental or lease agreement with you at the expiration of the period described above.

If you are a tenant, Halliday, Watkins & Mann, P.C. recommends that you contact an attorney to determine your rights and obligations.

# EXHIBIT "E"

## NOTICE OF TRUSTEE'S SALE

The following property will be sold at public auction to the highest bidder without warranty, at the South Main Entrance, Fourth Judicial District, American Fork Division, 75 East 80 North, American Fork, Utah, on 4/1/19 at 09:00 AM, for the purpose of foreclosing a Trust Deed executed by Gary L. Monson, as Trustor, in favor of Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, its successors and assigns, recorded on 4/3/07, as Entry # 48025:2007, covering real property purportedly known as 11041 North 5730 West, Highland, UT 84003, and more particularly described as:

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.**

**MORE CORRECTLY DESCRIBED AS FOLLOWS:**

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah County Recorder, State of Utah. TAX #** ▓▓▓▓▓▓▓

Ditech Financial LLC f/k/a Green Tree Servicing LLC is the current Beneficiary of the Trust Deed. Record owners of the property as of the recording of the Notice of Default are reported to be Linda Gayle Christensen and Esperanza April Hernandez and Gary L. Monson and Marilyn J. Monson aka Marilyn R. Monson aka Marilyn J. R. Monson and Royce L. Monson.

A $20,000.00 deposit in the form of a bank or credit union cashier's check or a bank official check, payable to Halliday, Watkins & Mann, P.C., is required to bid. A successful bidder who fails to tender the full purchase price will forfeit the entire deposit. The successful bidder must tender the deposit at the sale and the balance of the purchase price by 12:00 noon the following business day. The balance must be in the form of a wire transfer, bank or credit union's cashier's check, or bank official check payable to Halliday, Watkins & Mann, P.C. A bank or credit union cashier's check must be pre-printed and clearly state that it is a cashier's check. A bank official check must be pre-printed and clearly state that it is an official check.

Cash payments are not accepted.

A trustee's deed will be delivered to the successful bidder within five business days after receipt of the amount bid.

Successor Trustee disclaims liability for any error in the street address shown herein. Successor Trustee may void sale due to any unknown facts at time of sale that would cause the cancellation of the sale.  If sale is voided, Successor Trustee shall return funds to bidder, and the Successor Trustee and Beneficiary shall not be liable to bidder for any damages. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Beneficiary, Trustor, Successor Trustee or the Successor Trustee's attorney.

This is an attempt to foreclose a security instrument and any information obtained will be used for that purpose.

Dated: 2/25/19

HALLIDAY, WATKINS & MANN, P.C.:

By: _Paul W. Halliday Jr._

Name: _Paul W. Halliday Jr._
Attorney and authorized agent of the law firm of
Halliday, Watkins & Mann, P.C.
Successor Trustee
376 E 400 S, Ste 300
SLC, UT 84111
PH 801-355-2886
Office Hours: M-F: 8am – 5pm
H/W # 52911

# Notice to Tenant

As stated in the accompanying Notice of Trustee's Sale, this property is scheduled to be sold at public auction to the highest bidder unless the default in the obligation secured by this property is cured. If the property is sold, you may be allowed under Utah Code Section 57-1-25.5 to continue to occupy your rental unit until your rental agreement expires, or until 45 days after the date you are served with a notice to vacate, whichever is later. If your rental or lease agreement expires after the 45-day period, you may need to provide a copy of your rental or lease agreement to the new owner to provide your right to remain on the property longer than 45 days after the sale of the property.

You must continue to pay your rent and comply with other requirements of your rental or lease agreement or you will be subject to eviction for violating your rental or lease agreement.

The new owner of the new owner's representative will probable contact you after the property is sold with directions about where to pay rent.

The new owner of the property may or may not want to offer to enter into a new rental or lease agreement with you at the expiration of the period described above.

If you are a tenant, Halliday, Watkins & Mann, P.C. recommends that you contact an attorney to determine your rights and obligations.

# EXHIBIT "F"

## NOTICE OF TRUSTEE'S SALE

The following property will be sold at public auction to the highest bidder without warranty, at the South Main Entrance, Fourth Judicial District, American Fork Division, 75 East 80 North, American Fork, Utah, on 7/8/19 at 09:00 AM, for the purpose of foreclosing a Trust Deed executed by Gary L. Monson, as Trustor, in favor of Mortgage Electronic Registration Systems, Inc. as nominee for America's Wholesale Lender, its successors and assigns, recorded on 4/3/07, as Entry # 48025:2007, covering real property purportedly known as 11041 North 5730 West, Highland, UT 84003, and more particularly described as:

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah State County Recorder, State of Utah.**

**MORE CORRECTLY DESCRIBED AS FOLLOWS:**

**Lot 10, Plat "A", Castle Glen Estates, according to the Official Plat thereof as recorded in the office of the Utah County Recorder, State of Utah. TAX #** ▮▮▮▮▮▮▮

Ditech Financial LLC f/k/a Green Tree Servicing LLC is the current Beneficiary of the Trust Deed. Record owners of the property as of the recording of the Notice of Default are reported to be Linda Gayle Christensen and Esperanza April Hernandez and Gary L. Monson and Marilyn J. Monson aka Marilyn R. Monson aka Marilyn J. R. Monson and Royce L. Monson.

A $20,000.00 deposit in the form of a bank or credit union cashier's check or a bank official check, payable to Halliday, Watkins & Mann, P.C., is required to bid. A successful bidder who fails to tender the full purchase price will forfeit the entire deposit. The successful bidder must tender the deposit at the sale and the balance of the purchase price by 12:00 noon the following business day. The balance must be in the form of a wire transfer, bank or credit union's cashier's check, or bank official check payable to Halliday, Watkins & Mann, P.C. A bank or credit union cashier's check must be pre-printed and clearly state that it is a cashier's check. A bank official check must be pre-printed and clearly state that it is an official check.

Cash payments are not accepted.

A trustee's deed will be delivered to the successful bidder within five business days after receipt of the amount bid.

Successor Trustee disclaims liability for any error in the street address shown herein. Successor Trustee may void sale due to any unknown facts at time of sale that would cause the cancellation of the sale.  If sale is voided, Successor Trustee shall return funds to bidder, and the Successor Trustee and Beneficiary shall not be liable to bidder for any damages. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Beneficiary, Trustor, Successor Trustee or the Successor Trustee's attorney.

This is an attempt to foreclose a security instrument and any information obtained will be used for that purpose.

Dated: 6/3/19

HALLIDAY, WATKINS & MANN, P.C.:

By: _____

Name: ___Benjamin    Mann_____
Attorney and authorized agent of the law firm of
Halliday, Watkins & Mann, P.C.
Successor Trustee
376 E 400 S, Ste 300
SLC, UT 84111
PH 801-355-2886
Office Hours: M-F: 8am – 5pm
H/W # 52911

# Notice to Tenant

As stated in the accompanying Notice of Trustee's Sale, this property is scheduled to be sold at public auction to the highest bidder unless the default in the obligation secured by this property is cured. If the property is sold, you may be allowed under Federal Public Law No: 115-174 and/or Utah Code Section 57-1-25.5 to continue to occupy your rental unit up to 90 days following the date of the foreclosure sale or until your rental agreement expires, whichever is later. If your rental or lease agreement expires after the 90-day period, you will be required to provide a copy of your rental or lease agreement to the new owner to verify whether you and/or the rental or lease agreement meets eligibility requirements to remain in the property longer than 90 days after the foreclosure sale of the property.

You must continue to pay your rent and comply with other requirements of your rental or lease agreement or you will be subject to eviction for violating your rental or lease agreement.

The new owner or the new owner's representative will probably contact you after the property is sold with directions about where to pay rent.

The new owner of the property may or may not want to offer to enter into a new rental or lease agreement with you at the expiration of the period described above.

If you are a tenant, Halliday, Watkins & Mann, P.C. recommends that you contact an attorney to determine your rights and obligations.